# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

**SPECTRUM LABORATORIES, LLC,**
**a limited liability company,**

    *Plaintiff,*

**v.**                                Case No. 1:26-CV-105

**KING VAPE LLC, et al.,**

    *Defendants.*

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
## AND ORDER TO SHOW CAUSE

### INTRODUCTION

Plaintiff Spectrum Laboratories, LLC ("Spectrum Labs") is the owner of valuable federally registered trademarks associated with its Quick Fix® brand of synthetic urine products and related goods (the "Spectrum Trademarks"). Spectrum Labs has manufactured and sold products under the Quick Fix® brand throughout the United States for over two decades, building substantial goodwill and consumer recognition.

Defendants King Vape LLC, operating as "U VAPE," and its sole member Reem Muhsen, are selling counterfeit products bearing the Spectrum Trademarks at a retail location in Atmore, Alabama. Despite receiving two cease and desist letters, Defendants have continued their counterfeiting activities without interruption.

Most significantly, on March 14, 2026, more than five weeks after the second cease and desist letter, a customer purchased additional counterfeit products from the U VAPE store and provided them to Spectrum Labs, confirming that Defendants' counterfeiting is ongoing and willful. The purchased items included counterfeit Quick Fix® Plus and Quick Fix® Pro Belt Kit

1

products, which were rung up as "Custom Item" in the U VAPE point-of-sale system, further evidencing Defendants' knowledge that the products are not legitimate merchandise.

Spectrum Labs seeks a temporary restraining order to halt Defendants' ongoing counterfeiting activities and preserve the status quo while this dispute is resolved.

## FACTUAL BACKGROUND

I.     **SPECTRUM LABS'S TRADEMARK RIGHTS.**

Spectrum Labs is a limited liability company organized under the laws of Ohio. Spectrum Labs is engaged in the business of manufacturing, distributing, and selling synthetic urine products and related goods throughout the United States under its Quick Fix® brand. (Declaration of Matthew Stephens, ¶ 3.) Spectrum Labs is the owner of the following United States trademark registrations (collectively, the "Spectrum Trademarks"):

    a.   U.S. Trademark Registration No. 4,453,892 for the QUICK FIX mark; and

    b.   U.S. Trademark Registration No. 5,791,421.

(*Id.*) The Spectrum Trademarks are valid, subsisting, and incontestable, and are entitled to the full protections afforded by the Lanham Act, 15 U.S.C. § 1051 *et seq.* Through extensive and continuous use, marketing, advertising, and enforcement efforts over more than two decades, the Spectrum Trademarks have acquired substantial goodwill and are distinctive indicators of origin in the marketplace. (Declaration of Matthew Stephens, ¶ 4.)

II.     **DEFENDANTS' COUNTERFEITING ACTIVITIES.**

Defendant King Vape LLC ("King Vape") is an Alabama limited liability company with its registered office at 1812 S Maine Street, Atmore, Alabama 36502. King Vape conducts business under the name "U VAPE" at a retail location at 121 Lindberg Avenue, Atmore,

Alabama 36502. Defendant Reem Muhsen ("Muhsen") is the sole member and registered agent of King Vape LLC. (Complaint, ¶¶ 3–5.)

Spectrum Labs has credible, logged evidence that King Vape, operating as U VAPE, has been and is currently selling counterfeit products bearing the Spectrum Trademarks at its Atmore retail location. Specifically, King Vape is offering products for sale that: (a) bear unauthorized reproductions of the Spectrum Trademarks; (b) falsely represent themselves as genuine Spectrum Labs products; (c) lack legitimate verifiable batch numbers; and (d) were not manufactured, authorized, or approved by Spectrum Labs. (Complaint, ¶¶ 17–19.)

On December 1, 2025, a customer purchased two items labeled as "Custom Item" in the U VAPE point-of-sale system at the U VAPE store in Atmore, Alabama. These items included the Spectrum Trademarks on their packaging and held themselves out as being manufactured by Spectrum Labs. They were not genuine Spectrum Labs products. (Complaint, ¶¶ 20–21.)

## III. THE CEASE AND DESIST LETTERS.

On or about December 19, 2025, Spectrum Labs, through its in-house counsel, sent a cease and desist letter to King Vape via certified mail, demanding that Defendants immediately cease all activities that infringe the Spectrum Trademarks and constitute the sale of counterfeit products. (Complaint, ¶ 30.)

On February 10, 2026, Spectrum Labs, through its litigation counsel AdamsIP LLC, sent a second cease and desist letter to King Vape and Reem Muhsen via certified mail. The letter detailed Spectrum Labs' trademark rights, identified the specific infringing activities, set forth the substantial legal exposure Defendants faced, and demanded that Defendants: (a) immediately cease selling all counterfeit products; (b) identify all suppliers and distributors of the counterfeit products; (c) provide a complete accounting of gross revenues and profits from counterfeit sales;

and (d) deliver all remaining counterfeit inventory for destruction. (See Stephens Decl., ¶¶ 6, Ex. A.)  Defendants failed to respond to either cease and desist letter and have failed to comply with any of the demands set forth therein. (Complaint, ¶¶ 33–34.)

IV.     **DEFENDANTS' CONTINUED COUNTERFEITING AFTER NOTICE.**

On March 14, 2026, a customer visited the U VAPE store at 121 Lindberg Avenue, Atmore, Alabama and purchased two counterfeit Spectrum Labs products: one Quick Fix® Plus product and one Quick Fix® Pro Belt Kit and subsequently provided those products to Spectrum Labs. (Stephens Decl., ¶¶ 7–9.)  Both products bore the Spectrum Trademarks, including the Quick Fix® name and Spectrum Labs branding, but were not genuine Spectrum Labs products. Mr. Stephens, who is familiar with genuine Spectrum Labs products, identified multiple indicia of counterfeiting, including the lack of legitimate verifiable batch numbers and the use of third-party products inside the packaging and different colored part on products. (Stephens Decl., ¶¶ 10–11.)

Notably, the receipt from the March 14, 2026 purchase shows that the counterfeit products were listed as "Custom Item" in U VAPE's point-of-sale system rather than being identified by their product names. This is consistent with the December 1, 2025 purchase, where counterfeit products were also labeled as "Custom Item." The use of the "Custom Item" label further demonstrates Defendants' awareness that the products are counterfeit, as Defendants are deliberately concealing the true nature of these products in their sales records. (Stephens Decl., ¶ 12; Complaint, ¶ 20.)

Photographs of the counterfeit products purchased on March 14, 2026, are attached to the Declaration of Matthew Stephens as Exhibits B through E. These photographs depict the

counterfeit packaging bearing the Spectrum Trademarks, the counterfeit products themselves, and the receipt documenting the purchase. (Stephens Decl., ¶¶ 13–14, Exs. B–E.)

**LEGAL ARGUMENT**

## I. APPLICABLE LEGAL STANDARDS.

A court will issue a temporary restraining order where the requesting party demonstrates: (1) a substantial likelihood of success on the merits; (2) that the moving party will suffer irreparable injury if the order is not granted; (3) that the threatened injury to the plaintiff outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the order would serve the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

## II. SPECTRUM LABS IS LIKELY TO SUCCEED ON THE MERITS.

### A. Spectrum Labs' Trademark Infringement Claim Is Strong.

To prevail on a trademark infringement claim under Section 32 of the Lanham Act, 15 U.S.C. § 1114, a plaintiff must establish that: (1) it has a valid, protectable trademark; and (2) the defendant's use of the mark is likely to cause confusion among consumers. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997).

Both elements are overwhelmingly satisfied here. The Spectrum Trademarks are incontestable federal registrations, constituting conclusive evidence of Spectrum Labs' exclusive right to use the marks in commerce. 15 U.S.C. § 1115(b). The marks used by Defendants on the counterfeit products are identical to, or substantially indistinguishable from, the registered Spectrum Trademarks. When an alleged infringer uses a mark identical to the plaintiff's registered mark on the same type of goods, confusion is inevitable. *See Boigris v. EWT P&T, LLC*, 7 F.4th 1079, 1082 (11th Cir. 2021).

5

**B.**     **Spectrum Labs' Trademark Counterfeiting Claim Is Strong.**

The Lanham Act provides enhanced remedies for trademark counterfeiting which is defined as the use of "spurious marks" that are "identical with, or substantially indistinguishable from" a registered mark. 15 U.S.C. § 1127. Defendants' products bear marks that are identical to the Spectrum Trademarks, intended to deceive consumers into believing the products are genuine. The counterfeit products replicate the Quick Fix® name, logo, and overall trade dress of authentic Spectrum Labs products.

Defendants' counterfeiting is willful. Defendants received two cease and desist letters and continued to sell counterfeit products. The March 14, 2026 purchase—over three months after the first cease and desist letter and more than five weeks after the second—demonstrates that Defendants made a deliberate choice to continue their counterfeiting activities in defiance of Spectrum Labs' demands. *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) (willfulness established where defendant continued infringement after receiving notice).

**C.**     **Defendants' Conduct Constitutes False Designation of Origin.**

Defendants' sale of counterfeit products bearing the Spectrum Trademarks falsely represents that such products originate from or are affiliated with Spectrum Labs, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Consumers purchasing these products at U VAPE are deceived into believing they are acquiring genuine Spectrum Labs products when, in fact, they are receiving inferior counterfeits.

**D.**     **Muhsen Is Liable for Contributory Infringement and Counterfeiting.**

As the sole member, registered agent, and controlling person of King Vape LLC, Muhsen is personally liable for contributory trademark infringement and counterfeiting. A person is liable

for contributory infringement when he or she intentionally induces another to infringe a trademark or continues to supply an infringing product to one whom he or she knows or has reason to know is engaging in trademark infringement. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982). Upon information and belief, Muhsen directed, controlled, and participated in King Vape's sale of counterfeit products and derived a direct financial benefit therefrom. (Complaint, ¶¶ 25–29.)

## III. SPECTRUM LABS WILL SUFFER IRREPARABLE HARM WITHOUT A TRO.

The Lanham Act expressly provides that a plaintiff seeking injunctive relief in a trademark case "shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits." 15 U.S.C. § 1116(a) (as amended by the Trademark Modernization Act of 2020). As demonstrated above, Spectrum Labs has a strong likelihood of success on the merits of its trademark infringement and counterfeiting claims. Even absent this statutory presumption, Spectrum Labs would satisfy its burden of demonstrating irreparable harm. Irreparable harm in trademark cases includes loss of control of reputation, loss of trade, and loss of goodwill. *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir. 2005). The sale of inferior counterfeit products under the Spectrum Trademarks deceives consumers and erodes the goodwill Spectrum Labs has built over more than twenty years. This harm is particularly acute because Spectrum Labs cannot control the quality of the counterfeit products, and consumers who have negative experiences with counterfeits may attribute those experiences to Spectrum Labs.

Without injunctive relief, Defendants will continue to flood the market with counterfeit products, causing ongoing and irreparable damage to Spectrum Labs' brand and consumer relationships.

**IV.     THE BALANCE OF HARDSHIPS FAVORS SPECTRUM LABS.**

The balance of hardships tips decisively in Spectrum Labs' favor. A TRO merely requires Defendants to stop engaging in illegal activity—the sale of counterfeit products bearing another's registered trademarks. Defendants have no legally cognizable interest in continuing to sell counterfeit goods. *See Rolex Watch U.S.A., Inc. v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998).

In contrast, denial of a TRO would allow the continued erosion of Spectrum Labs' trademark rights and consumer goodwill. Each counterfeit sale not only diverts revenue from Spectrum Labs but also damages the trust and reputation Spectrum Labs has built over two decades of legitimate business operations. The harm to Spectrum Labs from continued counterfeiting far outweighs any burden on Defendants from being required to comply with the law.

**V.      THE PUBLIC INTEREST FAVORS A TRO.**

The public interest strongly favors a TRO in this case. The public has a significant interest in being free from confusion, deception, and fraud caused by counterfeit products. *See Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("[T]he public interest is served by preventing consumer confusion in the marketplace.").

Consumers who purchase counterfeit Spectrum Labs products are being deceived as to the source and quality of the goods they are purchasing. The sale of counterfeit products undermines consumer confidence in the marketplace and in brand-name products generally. Additionally, counterfeit products that have not been subjected to Spectrum Labs' quality control measures may pose safety or quality risks to consumers. The public interest is always served by preventing trademark counterfeiting and protecting consumers from confusion and deception.

**CONCLUSION**

For all the foregoing reasons, Plaintiff Spectrum Laboratories, LLC respectfully requests that this Court grant its Motion for Temporary Restraining Order, enter the Proposed Order submitted herewith, and order Defendants to appear and show cause why a preliminary injunction should not issue.

Dated: March 24, 2026

Respectfully submitted,


/s/ Douglas L. Bridges
Douglas L. Bridges (1974N06L)
**ADAMSIP LLC**
453 Dauphin Street
Mobile, Alabama 36602
Phone: (251) 289-9787
doug@adamsiplaw.com

*Attorney for Plaintiff*
*Spectrum Laboratories, LLC*